IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VICTORIA BAKER

        *Plaintiff*

      *v.*

LEGAL & GENERAL AMERICA, INC.

        *Defendant*.

Civil Action No.   ELH-15-1203

**MEMORANDUM**

Victoria Baker, the self-represented plaintiff, filed suit against her employer, "Legal and General America (Banner Life),"[1] defendant, on April 27, 2015.  She alleges discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* (the "ADA").  *See* ECF 1, "Complaint."  In particular, she alleges discrimination on the basis of race, color, national origin, and disability.  *Id.* at 2.

Baker has been employed by defendant since 2008.  ECF 16-1 at 1.  She is "Hispanic," "Black," and "FMLA certified effective June 2009."  ECF 1 at 5; ECF 13-2 at 2. According to Baker, she has "been unfairly treated in the handling" of various requests, and she has "had to endure significant obstacles" as to her requests, unlike other employees.  ECF 1 at 5.  In particular, Baker asserts that in May 2014, she asked to telecommute from Florida, rather than from Maryland (ECF 1 at 11), and her request was unfairly denied.  *Id.* at 5, 12, 13.  Plaintiff admits that her request was granted in March 2015.  *Id.* at 13.  However, she maintains that she has been subjected to harassment and retaliation.  *Id.* at 14.

Plaintiff seeks damages of $88,460, corresponding to two years of salary, which she

---

[1] Defendant identifies itself as Legal & General America, Inc.  *See, e.g.*, ECF 13 at 1.

claims is equivalent to "the amount of time that [she has] been pursuing relief. . . ."  ECF 1 at 4.
She also seeks "[c]ontinued employment without harassment and retaliation."  *Id.*

Defendant has moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5), and
12(b)(6).  ECF 13.   Defendant asserts numerous challenges pertaining, *inter alia*, to failure to
exhaust, failure to timely file suit, failure to state claims under Title VII or the ADA, and
insufficient service of process. *Id.* The motion is supported by a memorandum of law (ECF 13-1)
(collectively, the "Motion"), and several exhibits.[2]  In response, plaintiff filed a "Motion For
Summary Judgment" (ECF 16), along with a Memorandum (ECF 16-1) and exhibits.  She asks
the Court "to dismiss, in its entirety," defendant's Motion and to "enter summary judgment or
trial hearing."  ECF 16 at 1.  Plaintiff's exhibits include numerous email exchanges.  Defendant
has filed a reply in support of its Motion and in opposition to plaintiff's summary judgment
motion.  ECF 17, "Reply."

Plaintiff's submission in ECF 16 appears to be a response to defendant's Motion.
Therefore, I shall construe it as an opposition to the Motion ("Opposition").

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons
stated below, I conclude that service of process was untimely and improper.  However, in lieu of
dismissing the case on this basis, and I shall quash service of process and grant plaintiff leave to
serve defendant in compliance with Fed. R. Civ. P. 4. And, I shall deny, as premature and
without prejudice, defendant's motion to dismiss on the remaining grounds asserted in the
Motion.  To the extent plaintiff filed a motion for summary judgment, I shall deny that motion as
premature.

---

[2] In a letter dated October 26, 2015, the Clerk advised plaintiff of her right to respond to
the Motion. *See* ECF 14.

# I.   Factual Background[3]

Defendant is a Maryland-based insurance company.   ECF 13 at 1.   Baker began her employment with defendant in March 2008, as a licensing specialist.   ECF 13-2 ("Charge of Discrimination"), at 2.   She subsequently became an Applications Specialist.   *Id.*   Plaintiff was approved for leave under the Family Medical Leave Act ("FMLA") in 2009.   ECF 1 at 5.[4]

In May 2010, plaintiff "applied for a remote position with the App Assist Department." ECF 1 at 5.   She was not offered the position, however, supposedly because of her "lack of skills relevant for the position . . . ."   *Id.*   Yet, she claims that in January 2011, another employee, with "no insurance background," received the position.   *Id.*

In May 2011, after four interviews, Baker was offered a position as a part-time applications assistant ("App Assist"), with work hours from 4:30–9:30 p.m.   ECF 1 at 6.   She applied for a full-time App Assist position in June 2012, and was offered that position soon afterwards, in August of 2012.   ECF 1 at 7.   Her hours were 2:30–11:00 p.m.   *Id.*

On October 26, 2012, plaintiff executed a "Telecommuting Policy And Agreement" (the "Agreement") (ECF 16-4), which identified her "core work hours" as 2:30 p.m. to 11:00 p.m., Monday through Friday.   *Id.* at 1.   The Agreement allows plaintiff to work from home, and reflects a home office for plaintiff in Walkersville, Maryland.   *Id.* at 2.   Further, it provides that defendant has "sole discretion" to permit, continue, or discontinue the Agreement.   *Id.* at 3; *see also* ECF 1 at 13.

---

[3] Because plaintiff is self-represented, her Complaint is construed liberally.   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[4] There are no allegations in the Complaint as to a disability, despite plaintiff's reliance on the ADA.

Baker alleges that in early 2013, she had "an informal conversation" with her immediate supervisor, Bethany Braga, with respect to plaintiff's "desire to move to an earlier remote shift." ECF 1 at 7; *see also* ECF 16-3 at 3 (email of 7/16/13). In July 2013, Baker learned of openings for the shift she desired. ECF 1 at 8. Plaintiff avers that other employees who did not meet seniority criteria or other employment criteria nonetheless obtained the shift that she desired, *i.e.*, 1:00 p.m.-9:30 p.m. *Id.* at 8. According to Baker, some employees obtained shift changes without interviews and without any job postings by defendant. ECF 1 at 8-10. Despite Baker's "multiple requests for an earlier shift change" (*id.* at 9), Baker was informed that the shift positions she wanted were "no longer available," but she "would be placed at the top of the list for the next available 1-9:30 PM shift." *Id.* at 8; *see also* ECF 16-3 at 4. In October 2013, plaintiff was advised by Dawn Leshinski, part of department management (ECF 1 at 6), that plaintiff "would be first in line for a l-9:30 shift." *Id.* at 10; *see also* ECF 16-3 at 4.

In May 2014, plaintiff asked to change her telecommuting location from Maryland to Florida. ECF 1 at 11. This request was denied, supposedly because of "IT issues . . . ." *Id.* On May 29, 2014, plaintiff met with Leshinski and Kris Wong, from human resources and department management (ECF 1 at 6), who offered her a remote shift of 9:30 a.m. to 6:00 p.m., effective June 30, 2014. *Id.* at 11. Plaintiff accepted the offer. *Id.* But, plaintiff alleges that her "request for relocation [of her telecommuting] remained un-approved with the contingency that [defendant] would re-visit this request within 6 months." *Id.*

According to plaintiff, Wong told her that "the company was not prepared to allow any more employees to work from out of state," because "management was not comfortable with the IT issues involved." *Id.* at 11; *see also id.* at 12. However, plaintiff maintains that defendant "successfully employs several remote employees in various departments, in different states,

4

including employees within the App Assist department." *Id.*  In particular, she identified three employees who worked remotely, out-of-state, between 2012 and 2014. *Id.* at 11.  Specifically, plaintiff asserts that Chaniece Isaac has been working in Texas since 2012; Taylor Wilson has been working in Georgia since June 2014; and Lori Shrode has been working in Alabama since June 2014.  *Id.* at 11; *see also id.* at 13.[5]  According to plaintiff, she "was informed that these requests were granted on a pilot basis," but she complains that the "pilot program was never announced."  *Id.* at 11.  Plaintiff asserts, *id.* at 13:  "There is no pilot program and there are no IT concerns."

In March 2015, following a change in the "company's CEO" (*id.* at 12), plaintiff's request to telecommute from Florida was approved.  *Id.*

In the interim, in June 2014, plaintiff "submitted an EEOC complaint." *Id.* at 12.  In particular, she filed a Charge of Discrimination with the Maryland Commission on Civil Rights and the Equal Employment Opportunity Commission ("EEOC"), based on race and disability. ECF 13-2.  She alleged that the discrimination occurred on May 5, 2014, and she checked the boxes indicating discrimination based on race and disability.  *Id.* at 2.  In the text of her submission, Baker also alleged discrimination because she is Hispanic.  *Id.*  Further, she claimed that defendant discriminated against her by denying her request to telecommute from Florida. ECF 13-2 at 2.

In full, Baker averred, *id.*:

I.       . . . . On or about May 2, 2014, I submitted a request to my Human Resources Department to be transferred to Florida.  However, my transfer request was denied.

---

[5] The Complaint does not specify the race or ethnicity of these coworkers.

II.     I was not given a reason as to why my request was denied.  However, two of my co-workers, Lori Shrode (white) and Chaniece Isaac (Black) were granted transfers during the same period.

III.    I believe I was denied transfer due to my race (Black/Hispanic) . . . .

Thus, Baker's only allegation related to the denial of her request to telecommute from Florida.

The EEOC issued a "Dismissal And Notice Of Rights" to plaintiff on January 30, 2015, as well as "Notice Of Suit Rights."  *See* ECF 1 at 12; ECF 13-3 at 2.  The EEOC stated that it was "unable to conclude that the information obtained establishes violations of the statutes." ECF 13-3 at 2.  Nor did it make a finding of compliance by defendant.  *Id.*

In the Complaint, plaintiff alleges that, after filing her EEOC charge, she has been "constantly . . . harassed" and subjected to "retaliatory actions . . . ."  ECF 1 at 14.  She states:  "I am now consistently being harassed.  My work is now being scrutinized in an effort to manage me out of my job."  *Id.* at 13.  She adds that errors in regard to her work, that previously would not have been regarded as errors, are now brought to her attention. *Id.* And, she complains that work is not being assigned to her, nor is training made available to her.  *Id.*

## II.     Facts Pertinent to Service of Process

As noted, on April 27, 2015, plaintiff filed suit under Title VII and the ADA.  ECF 1.  On May 29, 2015, the Court issued an Order advising plaintiff of her responsibility to effect service of process on defendant and the means by which to effect service.  ECF 4.  In particular, plaintiff was advised that, under Fed. R. Civ. P. 4(m) and Local Rule 103.8(a), she had 120 days from the date of filing of the Complaint to accomplish service.  *Id.* at 1.[6]  Therefore, plaintiff was required to serve defendant by August 25, 2015 (*i.e.*, 120 days after the filing of the Complaint).

---

[6] Effective December 1, 2015, the time has been reduced to 90 days.

Because the docket did not reflect service of process, the Court issued an Order to Show Cause to Baker on September 24, 2015 (ECF 6), directing her to show cause within 17 days as to why service was not accomplished.   Baker did not respond.   But, on September 28, 2015, a submission entitled "Proof of Service" was docketed (ECF 7), indicating that the summons was issued in the name of "Legal & General America C/O Gene Gilbertson."   *Id.*   And, the Affiant stated that on September 25, 2015, the Affiant "personally" served the defendant, "Legal & General America."   But, there was no indication of the name of the person who was actually served.   ECF 7.

Defendant has submitted the Affidavit of Geoffrey Gentilucci (ECF 13-4), Assistant General Counsel of defendant.   He avers that on September 25, 2015, via interoffice mail, he received a copy of the summons and Complaint in an envelope on which his name was written. *Id.* ¶ 4.   He determined after investigation that the envelope was initially given to Maria Teresa Valladares, an individual employed by Presidential Cleaning Services, a company that cleans the offices of defendant, and she in turn gave it to Johnny Maddox, defendant's mailroom manager. *Id.* ¶ 5.   Gentilucci denies ever having been personally served with the summons and Complaint. *Id.* ¶ 6.   And, he also avers that service was not made by certified mail to any agents of defendant authorized to accept service.   *Id.*   Defendant has also submitted a copy of the envelope in which the summons and Complaint were contained.   *See* ECF 13-5.   It bears the name of Geoffrey Gentilucci.   *Id.* at 2.

In addition, defendant has filed the Affidavit of Johnny Maddox.   He avers that he is the manager of the mailroom at defendant's office in Frederick, Maryland.   ECF 13-6, ¶ 1.   Further, he attests that on September 25, 2015, Patrick McMahon, an employee under his supervision, advised that "an individual named Maria (last name unknown) employed by a subcontractor who

cleans Legal & General's offices handed him an envelope addressed to Geoffrey Gentilucci . . . ." *Id.* ¶ 3.   McMahon delivered the envelope to Gentilucci through interoffice mail. *Id.*

In her Opposition, plaintiff asserts that defendant was served within 120 days of issuance of the summons on May 29, 2015.   ECF 16 at 1.   Plaintiff adds that she was "under the impression" that the date by which service must be made runs from the date of issuance of the summons. *Id.*   She also claims that the process server "had no way to distinguish that [Maria] was not in a position to receive the summons." *Id.*

Plaintiff has also submitted the Affidavit of Nicole Wivel.   ECF 16-6.   Wivel avers that on September 25, 2015, she hand delivered the summons and a sealed envelope "to an individual by the name of Maria at the Defendant's corporate office address." *Id.* ¶ 4. Further, Wivel states: "Maria represented herself as an employee of the company and assured me that the envelope would be delivered to the individual referenced on the envelope, Geoffrey Gentilucci." *Id.*

With its Reply, defendant submitted the Affidavit of Maria Teresa Valladares (ECF 17-2), translated from Spanish (ECF 17-1).   Valladares avers that she has "limited command of the English language." *Id.* ¶ 2.   Further, she states that she is employed by Presidential Service Industries, Inc., a commercial cleaning company (*id.* ¶ 3), and her duties include cleaning defendant's offices. *Id.* ¶ 4.   She recalled that while at defendant's office on September 25, 2015 (*id.* ¶ 5), an unknown woman gave her an envelope and asked her to take it to defendant's mailroom. *Id.* ¶ 6.   She then gave it to McMahon, defendant's employee. *Id.*   Valladares avers that she was not asked, and never said, that she is an employee of defendant. *Id.* ¶ 7.

At the very least, it is undisputed that plaintiff belatedly served a woman named Maria, and Maria is not an employee or agent of defendant.

### III.    Discussion

Fed. R. Civ. P. 12(b) provides that, before submitting a responsive pleading, a defendant may move to dismiss a complaint for "(4) insufficient process" or "(5) insufficient service of process."  Generally, "[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service," and a "Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery[ ] of the summons and complaint."  5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed. 2004, Supp. 2016).  Here, defendant has moved to dismiss under Rule 12(b)(5).  "Once service has been contested," as here, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4."  *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006); *accord*, *e.g.*, *Baylor v. Wegman's Food Market, Inc.*, WDQ-14-3330, 2015 WL 4396609, at *1 (D. Md. July 16, 2015).

Fed. R. Civ. P. 4(c)(1) mandates that a "summons must be served with a copy of the complaint."  *See Danik v. Hous. Auth. of Baltimore City*, 396 Fed. App'x 15, 16 (4th Cir. 2010) ("The federal rules require that a defendant be served with the complete pleading and a copy of the summons.").  And, "[t]he plaintiff is responsible" for service within the time provided by Rule 4(m).  *Id.*

Further, Rule 4(a) specifies the contents of a summons.  Among other things, it "must . . . (F) be signed by the clerk; and (G) bear the court's seal."  Process may be served, *inter alia*, by "delivering a copy" of the summons and complaint "to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2)(C).  Pursuant to Rule 4(e)(1), service may also be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . . ."

Under Rule 4(*l*)(1), a plaintiff must submit proof of service "by the server's affidavit." But, "[f]ailure to prove service does not affect the validity of service," and "[t]he court may permit proof of service to be amended." Fed. R. Civ. P. 4(*l*)(3).

Of relevance here, "[u]nder Rule 4, a corporation must be served by (1) delivering the summons and complaint to 'an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process,' or (2) following the law of Maryland." *See Baylor*, WDQ-14-3330, 2015 WL 4396609, at *2 (citing Fed. R. Civ. P. 4(e), (h)). As Judge Quarles stated in *Baylor*, *id.* (citing Md. Rule 2-124(d)):

> Service [in Maryland] is made upon a corporation . . . by serving its resident agent, president, secretary, or treasurer. If the corporation . . . has no resident agent or if a good faith attempt to serve the resident agent, president, secretary, or treasurer has failed, service may be made by serving the manager, any director, vice president, assistant secretary, assistant treasurer, or other person expressly or impliedly authorized to receive service of process.

In particular, Maryland Rule 2-121(a) permits service by mailing the summons and complaint to the person to be served by certified mail, requesting Restricted Delivery, so as to show who was served, the date, and the address of delivery. *Baylor*, WDQ-14-3330, 2015 WL 4396609, at *2.

At the relevant time, Fed. R. Civ. P. 4(m) required plaintiff to serve the defendant "within 120 days after the complaint is filed."[7]  If a defendant is not served within the requisite time, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.*  However, under Rule 4(m), "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*[8]

---

[7] As noted, the Rule has since been amended to require service within 90 days.

[8] Similarly, Local Rule 103.8 provides that "the Court may enter an order asking the party to show cause why the claim should not be dismissed."  And, Local Rule 103.8 states that "the claim shall be dismissed without prejudice" if the plaintiff "fails to show cause within" a "time set by the Court."

Rule 4(m) was enacted in 1993 as a successor to former Rule 4(j), which required that a case "shall be dismissed" if the defendant was not served within 120 days and the plaintiff "cannot show good cause why such service was not made within that period." *Chen v. Mayor & City Council of Baltimore*, 292 F.R.D. 288, 292 n.6 (D. Md. 2013), *aff'd*, 546 Fed. App'x 187, 188 (4th Cir. 2013) (per curiam), *cert. granted*, 35 S. Ct. 475 (2014), *cert. dismissed*, 135 S. Ct. 939 (2015). After Rule 4(m) was enacted, the Fourth Circuit decided *Mendez v. Elliott*, 45 F.3d 75, 78 (4th Cir. 1995), in which it opined that Rule 4(m) represented a "renumber[ing]" of former Rule 4(j), "without a change in substance," and stated: "Rule 4(m) requires that if the complaint is not served within 120 days after it is filed, the complaint must be dismissed absent a showing of good cause." *Id.* at 78.  In so stating, however, the *Mendez* Court did not discuss the Advisory Committee Notes to Rule 4(m), which state that the rule "'authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision *even if there is no good cause shown*.'" *Chen*, 292 F.R.D. at 292 (quoting Advisory Committee Notes) (emphasis altered).

Subsequent to *Mendez*, the Supreme Court decided *Henderson v. United States*, 517 U.S. 654 (1996).  In dicta, the Supreme Court stated that, under Rule 4(m), "courts have been accorded discretion to enlarge the 120-day period even if there is no good cause shown.'" *Id.* at 662 (quoting Advisory Committee Notes to Rule 4(m)); *see also id.* 517 U.S. at 658 n.5.

Several decisions in this district have observed that it is unclear, in this circuit, whether Rule 4(m) vests a court with discretion to grant an extension of the service deadline, in the absence of good cause.  *See, e.g.*, *Lehner v. CVS Pharmacy*, RWT-08-1170, 2010 WL 610755, at *2 (D. Md. Feb. 17, 2010); *Knott v. Atlantic Bingo Supply, Inc.*, JFM-05-1747, 2005 WL 3593743 (D. Md. Dec. 22, 2005); *Hoffman v. Baltimore Police Dep't*, 379 F. Supp. 2d 778, 786

(D. Md. 2005); *Melton v. Tyco Valves & Controls, Inc.*, 211 F.R.D. 288 (D. Md. 2002); *Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 526 (D. Md. 1999), *abrogated by Chen*, 292 F.R.D. 288; *United States v. Britt*, 170 F.R.D. 8 (D. Md. 1996).  Some regard *Mendez* as binding circuit precedent, *see, e.g.*, *Britt*, 170 F.R.D. at 9, while others have concluded that "*Mendez* is no longer good law."  *Hammad*, 31 F. Supp. 2d at 527; *see also Melton*, 211 F.R.D. at 289–90. Others have found it unnecessary to resolve definitively whether a finding of good cause is mandatory before an extension can be granted.  *See, e.g.*, *Lehner*, 2010 WL 610755, at *2; *Knott*, 2005 WL 3593743, at *1 n.1.   Nevertheless, even if good cause is no longer an absolute requirement under Rule 4(m), "the Court would still need to have some reasoned basis to exercise its discretion and excuse the untimely service: the Court must give some import to the rule." *Hoffman*, 379 F. Supp. 2d at 786; *see also Lehner*, 2010 WL 610755, at *3 (observing that where plaintiff "made no effort to serve Defendant within the time allotted under Fed. R. Civ. P. 4(m)," even assuming that the court had discretion to excuse untimely filing, the court would "not make a mockery of the time requirements set forth in the Federal Rules of Civil Procedure").

Notably, good cause to waive the time requirement in Rule 4(m) does not turn on the "possibility that Plaintiff's claims will be time-barred if dismissed without prejudice."  *Knott*, 2005 WL 3593743, at *2; *see also Chen*, 292 F.R.D. at 293 ("'[T]he good cause inquiry . . . implicates the reason for failure to effect service, not the severity of the consequences.'  Accordingly, 'it is of no moment that the statute of limitations may pose a barrier to a new complaint . . . .'") (citations and quotations omitted).   However, that circumstance requires the court to act prudently before dismissing a case for failure to serve within the time prescribed by the rule.

As noted, plaintiff filed suit on April 27, 2015.  ECF 1.  On September 24, 2015, the Court ordered plaintiff to show cause for her delay in effecting service.  *See* ECF 6.  "Good cause" requires a showing that plaintiff made "reasonable and diligent efforts to effect service prior to the [applicable time] limit."  *Chen*, 292 F.R.D. at 293.  Mere self-representation is not a basis to establish good cause.  *Id.* at 293–94.[9]  Plaintiff did not respond to the Court's order. Therefore, she did not show any cause for the delay.

However, plaintiff claims that defendant was, in fact, served on September 25, 2015.  *See* ECF 16-6.  Even assuming that service was proper, that date is more than 150 days after plaintiff filed her Complaint.  Thus, service was well beyond the 120-day time period then prescribed by Rule 4(m).  Moreover, service was not proper because plaintiff failed to comply with the requirements for service upon a corporation.  The affidavit of service (ECF 7) makes clear that plaintiff did not serve any of the authorized individuals listed in Fed. R. Civ. P. 4(h) or Maryland Rule 2-124(d).  Nor did she mail the Complaint and summons to one of these individuals, via certified mail.  *See* ECF 7; ECF 13-4, ¶ 6; ECF 17-1, ¶ 4.

Crediting the Affidavit submitted by plaintiff from Nicole Wivel (ECF 16-6), plaintiff asserts only that on September 25, 2015, the summons and Complaint were delivered "to an individual by the name of Maria [who] represented herself as an employee of the company . . . ." *Id.* ¶ 4.  However, there is no indication that Maria was a corporate officer or agent of defendant.

---

[9] Where a plaintiff has failed to timely serve a defendant, courts have found good cause lacking in a variety of circumstances, some quite compelling. *See, e.g.*, *Braithwaite v. Johns Hopkins Hosp.*, 160 F.R.D. 75 (D. Md. 2005) (holding that murder of a self-represented plaintiff's daughter did not constitute good cause to excuse failure to serve defendant within 120 days); *Knott*, 2005 WL 3593743, at *1–2 (holding that serious illness suffered by plaintiff's counsel, which confined him to "bed rest," did not constitute good cause for failure to serve defendant within 120 days).

Indeed, plaintiff's own submission establishes that service was not proper and that service was untimely.[10]

In sum, I am not persuaded that plaintiff has carried her burden to prove timely or proper service of process. *See O'Meara*, 464 F. Supp. 2d at 478 (stating plaintiff bears the burden and that "the plain requirements for the means of effecting service may not be ignored"); *see also Hoffman*, 379 F. Supp. 2d at 786; *see also Lehner*, 2010 WL 610755, at *3. And, apart from the requirements of Fed. R. Civ. P. 4(h) and Maryland Rule 2-124(d), plaintiff has also failed to show good cause as to why she did not timely serve the defendant.

Defendant's Motion seeking dismissal is based on Rule 12(b)(5). Insufficient service of process does not always necessitate dismissal, however. *See*, *e.g.*, *Pugh v. E.E.O.C.*, DKC-13-02862, 2014 WL 2964415, at *3 (D. Md. June 30, 2014). Rather, "'when service of process gives the defendant actual notice of the pending action, the court may construe Rule 4 liberally.'" *Miller v. Baltimore City Bd. of Sch. Comm'rs*, 833 F. Supp. 2d 513, 516 (D. Md. 2011) (quoting *O'Meara*, 464 F. Supp. 2d at 476). Generally, "[w]here 'the first service of process is ineffective, a motion to dismiss should not be granted, but rather the Court should treat the motion in the alternative, as one to quash the service of process and the case should be retained on the docket pending effective service.'" *Pugh*, DKC-13-2862, 2014 WL 2964415, at *3 (quoting *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983)).

## IV. Conclusion

Accordingly, for the foregoing reasons, I shall quash service of process and grant plaintiff 21 days from the date of docketing of this Memorandum and its corresponding Order, in which

---

[10] Plaintiff's Affiant, Ms. Wirel, asserts that Ms. Valladares claimed she was an authorized representative of the defendant. But, it is uncontradicted that Valladares speaks limited English and does not work for defendant.

to serve defendant with a copy of the Complaint and a summons, in compliance with Fed. R. Civ. P. 4.  And, I shall deny as premature defendant's Motion on the remaining grounds, without prejudice to defendant's right to renew the Motion following service of the Complaint.   Finally, to the extent that plaintiff has moved for summary judgment (ECF 16), I shall deny that motion as premature.

An Order follows.

Date:   July 7, 2016                             _____/s/_____
                                                Ellen Lipton Hollander
                                                United States District Judge